UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CLIFFORD WASHINGTON, ET AL., | § | |
| individually and on behalf of all | § | |
| others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | No. 5:16-CV-130-RP |
| | § | |
| PATTERSON-UTI ENERGY, INC., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motion to Dismiss, filed April 25, 2016, (Dkt. #28), and the responsive pleadings thereto. After reviewing the pleadings, the relevant case law, and the factual record, the Court grants Defendants' motion.

## I.      BACKGROUND

Plaintiffs initially brought this action against defendants Patterson-UTI Energy, Inc. ("Patterson-UTI"), Torqued-Up Energy Services, Inc. ("Torqued-Up"), and Universal Pressure Pumping, Inc. ("UPP") on February 8, 2016, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs are oil and gas field workers, and allege that they were underpaid because their non-discretionary bonus pay was excluded from the rate used to calculate their overtime pay, in violation of the FLSA. On February 12, 2016, Plaintiffs moved for conditional class certification under the FLSA. Plaintiffs' initial complaint, motion for conditional certification, and the affidavits attached to their motion for conditional certification generally referred to Patterson-UTI, Torqued-Up, and UPP, collectively, as "Defendant," and

made no distinction between the actions of each entity with respect to Plaintiffs' employment. The initial complaint also alleged that Torqued-Up and UPP are subsidiaries of Patterson-UTI.

In their Response to Plaintiffs' Motion for Conditional Certification, filed April 5, 2016, defendants Patterson-UTI and UPP asserted that Torqued-Up is not a subsidiary of Patterson-UTI, and also explained that Torqued-Up filed for bankruptcy on November 24, 2015. Defendants additionally asserted that at no time during their employment at UPP were Plaintiffs ever paid bonuses.

In light of this response,[1] on April 11, 2016, Plaintiffs filed an amended complaint, dropping Torqued-Up as a defendant and adding Kelly Prentiss, the CEO of Torqued-Up, individually and as an officer of Torqued-Up.  Plaintiffs' amended complaint includes new allegations relating to the relationship between Torqued-Up, UPP, and Patterson-UTI, including (1) that "Torqued-Up sold part of its corporation to [UPP]," (2) that Patterson-UTI and/or UPP "had the same managers/supervisors, business model, employees, equipment, facilities, and provides or provided the same services to the same clients as its predecessor, Torqued-Up," (3) that "Torqued-Up's managers and supervisors knew about Torqued-Up's practices of not paying employees, including Plaintiffs, pursuant to the requirements of the FLSA, and informed [Patterson-UTI] and/or [UPP] before the sale of Torqued-Up," (4) that, after the sale, Patterson-UTI and/or UPP "changed their way of pay to the oil field workers," (5) that Patterson-UTI and/or UPP "are able to provide adequate relief to Plaintiffs under the FLSA," and (6) that "the overall equities support the imposition of successor liability on [Patterson-UTI] and/or [UPP]." (Am. Compl. ¶¶ 19–23).

On April 25, 2016, defendants Patterson-UTI and UPP ("Defendants") filed a motion to dismiss the amended complaint, arguing that Plaintiffs failed to sufficiently plead that Patterson-

---

[1] *See* Pls.' Reply regarding Mot. for Conditional Cert. at 4–5.

UTI and UPP are liable for the alleged FLSA violations.   Plaintiffs filed a response to Defendants' motion to dismiss on May 2, 2016 requesting that the Court deny Defendants' motion, or in the alternative, grant them leave to amend.

## II.     STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).   Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The court must initially identify allegations in the complaint that are no more than legal conclusions or "[t]hreadbare recitals of a cause of action's elements," then assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DISCUSSION

Defendants maintain that Plaintiffs' amended complaint is deficient because it: (a) does not sufficiently provide them fair notice of the allegations against them by failing to identify what conduct allegedly makes Patterson-UTI and UPP liable, (b) does not sufficiently plead that Patterson-UTI and UPP are liable as successors of Torqued-Up, and (c) does not sufficiently allege that Patterson-UTI is Plaintiffs' employer.   The Court will address each of these arguments in turn.

### A.    Fair Notice

Defendants Patterson-UTI and UPP argue that the amended complaint fails to provide them fair notice—or explain "why each Defendant could plausibly be liable"—in violation of Federal Rule of Civil Procedure 8.  (Defs.' Mot. to Dismiss at 10).  "[U]nder the Federal Rules of Civil Procedure's requirement of notice pleading, defendants in all lawsuits must be given notice of the specific claims against them."  *Anderson v. U.S. Dep't of Housing & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)).  "Although this notice does not require pleading specific facts, the complaint must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Id.* (quoting *Twombly*, 550 U.S. at 545).

First, Defendants argue that Plaintiffs fail to provide them fair notice of the allegations against them because the amended complaint lumps together the named defendants, referring to them collectively as "Defendant."  Defendants assert that this collective pleading makes it difficult to identify what actions are specifically attributable to Patterson-UTI, UPP, Kelly Prentiss, or former defendant Torqued-Up.  Second, Defendants argue that Plaintiffs have failed to distinguish between the actions of Patterson-UTI and UPP by attributing actions to

"Patterson[-UTI] and/or [UPP]."  In response, Plaintiffs contend that they have provided enough information regarding the role of each defendant to provide the notice required by Rule 8.

With respect to Defendants' first argument, the Court agrees with Plaintiffs that they have adequately distinguished between the actions of the two defendants seeking to dismiss the complaint, Patterson-UTI and UPP, and the other current and former defendants in the amended complaint.  Specifically, in their amended complaint Plaintiffs allege violations of the FLSA by Torqued-Up, and separately allege that Patterson-UTI and UPP are subject to successor liability for Torqued-Up's violations.  (Am. Compl. ¶¶ 19–23).  That the amended complaint regularly refers to all defendants collectively as "Defendant" elsewhere (Am. Compl. ¶¶ 1–5, 26–47), does not muddy the waters so much that Patterson-UTI and UPP cannot discern how the allegations relate to them.  Further, because Plaintiffs allege Patterson-UTI and UPP are Torqued-Up's successors, it is not illogical that Plaintiffs use the singular term "Defendant" in referring to the actions of Torqued-Up that Plaintiffs assert should be attributed to Patterson-UTI and UPP.

With respect to Defendants' second argument, however, the Court agrees with Defendants that the amended complaint fails to adequately distinguish between the actions of Patterson-UTI and UPP so as to provide them individually fair notice.  The only allegations specific to either Patterson-UTI or UPP are that UPP acquired part of Torqued-Up, and that UPP is a subsidiary of Patterson-UTI.  (Am. Compl. ¶¶ 18–19).  All other substantive allegations that specifically name Patterson-UTI and UPP treat them as one entity—"Patterson[-UTI] and/or [UPP]."  (Am. Compl. ¶¶ 20–23).  It is this lumping together that makes the amended complaint deficient, particularly with respect to Patterson-UTI.  It is unclear, for example, whether Plaintiffs' allegation that "Patterson[-UTI] and/or [UPP] changed their way of pay to the oil field

workers," (Am. Compl. ¶ 22) is intended to allege that Patterson-UTI directly pays some of the Plaintiffs, or instead, that UPP's actions should be attributed to Patterson-UTI.

This deficiency is like the one discussed in a recent case from the Southern District of Texas relied on by Defendants, *Del Castillo v. PMI Holdings North America Inc.*, No. 4:14–CV–3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015).  In *Del Castillo*, the district court noted that while the complaint provided some specific allegations relating to a group of defendants, referred to as the "Monitoring Defendants" in the complaint, its "failure to distinguish between the so-called 'Monitoring Defendants' [was] fatal."  *Id.* at *6.  It explained that "[a]t a minimum, Plaintiffs should endeavor to explain what role each Defendant played . . . rather than grouping them together at all times."  *Id.*  Similarly, here, Plaintiffs have failed to distinguish between the two defendants they allege to be successors—Patterson-UTI and UPP—in a way that allows Defendants and the Court to understand what role each allegedly plays in Plaintiffs' claims.

Because the amended complaint fails to identify which actions were taken by Patterson-UTI and which were taken by UPP, it fails to put them on notice of the allegations against them as required by Rule 8.  For this reason alone, Defendants' motion to dismiss is properly granted.

## B.    Successor Liability

Defendants Patterson-UTI and UPP next argue that Plaintiffs have failed to sufficiently allege that they are liable as successors to Torqued-Up, the employer who allegedly committed violations of the FLSA.  The Fifth Circuit has not yet ruled on whether successor liability is available under the FLSA.[2]  Defendants, for the purposes of their motion to dismiss, assume that

---

[2] In *Powe v. May*, 62 F. App'x 557 (5th Cir. 2003) the Fifth Circuit assumed, without deciding, that successor liability applies under the FLSA.  This Court has identified no Fifth Circuit case since *Powe* addressing the issue.

successor liability is available under the FLSA.[3]  Thus, for the purposes of this order, the Court

will presume, without deciding, that successor liability is available under the FLSA.[4]

　　　　Generally, a corporation that acquires another corporation or its assets does not take on

the liabilities of the predecessor corporation.  *See In re Louisiana Crawfish Producers*, 772 F.3d

1026, 1030 (5th Cir. 2014) (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5

(1973)); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985).  One exception to

this general rule is where there is "'substantial continuity' in the business enterprise before and

after the change of ownership."  *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996)

(citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 551 (1964)).  This exception was

derived from labor law principles "to ensure that an employee's statutory rights are not vitiated

by the mere fact of a sudden change of the employer's business."  *Id.* at 750 (citations omitted).

"The doctrine generally applie[s] in circumstances where, absent successor liability, an employer

could complete a corporate sale that would extinguish its liability to the workers, and the workers

would be powerless to stop it."  *Valdez v. Celerity Logistic, Inc.*, 999 F. Supp. 2d 936, 940 (N.D.

Tex. 2014).

　　　　The Fifth Circuit, in *Rojas v. TK Communications, Inc.*, adopted a nine-factor test for

establishing successor liability:

> (1) whether the successor company had notice of the charge or pending lawsuit
> prior to acquiring the business or assets of the predecessor; (2) the ability of the
> predecessor to provide relief; (3) whether there has been a substantial continuity
> of business operations; (4) whether the new employer uses the same plant; (5)
> whether he uses the same or substantially the same work force; (6) whether he
> uses the same or substantially the same supervisory personnel; (7) whether the

---

[3] In their motion to dismiss, Patterson-UTI and UPP reserved the right to argue otherwise.  (Defs.' Mot. to Dismiss at 4).

[4] Every federal court to address the issue of whether successor liability is available under the FLSA has determined that it is.  *Cuervo v. Airport Servs., Inc.*, 984 F. Supp. 2d 1333, 1337 (S.D. Fla. 2013) (finding that all federal courts that have considered the issue are unanimous that FLSA successor liability exists); *Thomson v. Bruister & Assocs., Inc.*, No. 3:07–00412, 2013 WL 1099796, at *5 (M.D. Tenn. 2013) (noting that Defendants could not identify "a single opinion where successor liability has been rejected as a matter of law in an FLSA case").

same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

87 F.3d at 750 (quoting *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985)). In *Rojas*, the Fifth Circuit agreed with the Seventh Circuit that "the first two factors are critical," and that the remaining seven factors are used to determine whether there was a continuity of business operations from the predecessor to the successor. *Id.* Thus, the nine-factor test adopted in *Rojas* can largely be reduced to three factors: (1) whether the successor company had notice of the potential liability prior to acquiring the business or assets of the predecessor; (2) whether the predecessor has the ability to provide relief; and (3) whether there has been a substantial continuity of business operations between the predecessor and the successor. *See id.* (citing *Bates v. Pacific Maritime Ass'n*, 744 F.2d 705, 709–10 (9th Cir. 1984) (applying nearly the same three factor test)).[5]

Plaintiffs assert that both Patterson-UTI and UPP should be held liable as successors to Torqued-Up. (Am. Compl. ¶ 23). The Court will address whether Plaintiffs have adequately alleged successor liability with respect to each of these defendants separately.

### 1.      Successor Liability for Patterson-UTI

As a threshold matter, to be liable under a theory of successor liability, a company must acquire assets from another company. *See Rojas*, 87 F.3d at 750 ("[T]he successor doctrine arises . . . in situations where the assets of a defendant employer are transferred to another entity."). Here, Plaintiffs argue that successor liability should be imposed on both Patterson-UTI

---

[5] Rather than using the test announced in *Rojas* in their briefing, the parties primarily rely on a similar test announced in a recent district court opinion, *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 944 (N.D. Tex. 2014). The test used in *Valdez* is largely the same as the one from *Rojas*, however, the *Valdez* court added an additional element—"whether the overall equities support the imposition of successor liability." *Valdez*, 999 F. Supp. 2d at 944. This Court is not convinced that it should depart from the test announced in *Rojas* and consider the overall equities at this stage, particularly where the test used in *Rojas*, itself, is intended to address the question of whether it would be equitable to impose liability on a successor. *See Musikiwamba*, 760 F.2d at 750 ("The successor doctrine is derived from equitable principles.").

and UPP, but do not allege that Patterson-UTI acquired assets of Torqued-Up.  Instead, in their amended complaint, they allege only that UPP acquired assets from Torqued-Up.  (Am. Compl. ¶ 19).  Plaintiffs' amended complaint also does not allege facts that would justify attributing UPP's actions to Patterson-UTI or piercing the corporate veil. *See, e.g.*, *U.S. v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 690 (5th Cir. 1985) (noting "limited liability remains the norm in American corporation law" and explaining "certain equitable exceptions to the doctrine that have developed" that justify piercing corporate veil); *see also U.S. ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F. Sup. 2d 35, 39–41 (D. Mass. 2000) (dismissing claims against parent company, alleged to be successor-in-interest, where its subsidiary had purchased assets of business, but no allegations were made that parent company had done so, and no factual allegations related to veil piercing were made).  Because Plaintiffs do not allege that Patterson-UTI has acquired assets from Torqued-Up, and provide no explanation as to how Patterson-UTI can otherwise be considered a successor to Torqued-Up, they have failed to sufficiently allege that Patterson-UTI can be held liable under a theory of successor liability.  Plaintiffs' claims against Patterson-UTI are thus properly dismissed.

## 2.   Successor Liability for UPP

As already noted, the amended complaint alleges that UPP acquired assets from Torqued-Up.  (Am. Compl. ¶ 19).  Thus, the Court will consider whether, as to UPP, Plaintiffs have adequately pled the elements of successor liability, in short, (a) substantial continuity, (b) notice, and (c) ability of the predecessor to provide relief.[6]  *Rojas*, 87 F.3d at 750.

### a.   Substantial Continuity

Defendants first argue that Plaintiffs have failed to sufficiently allege continuity between the predecessor company, Torqued-Up, and its successor, UPP.  The substantial continuity

---

[6] These elements are listed and addressed by the Court in the order addressed by the parties.

element of the successor liability test adopted by *Rojas* requires consideration of "whether there

is a continuity in operations and the work force of the successor and predecessor employers."

*Rojas*, 87 F.3d at 750.  *Rojas* listed the following seven factors that "provide a foundation for

analyzing this question":

- "whether there has been a substantial continuity of business operations;"
- "whether the new employer uses the same plant;"
- "whether he uses the same or substantially the same work force;"
- "whether he uses the same or substantially the same supervisory personnel;"
- "whether the same jobs exist under substantially the same working conditions;"
- "whether he uses the same machinery, equipment, and methods of production;" and
- "whether he produces the same product."

*Id.*  No one of the seven factors is critical.  *See id.*  The amended complaint alleges that

"Torqued-Up sold part of its corporation to [UPP]," and that "after the sale, [Patterson-UTI]

and/or [UPP] had the same managers/supervisors, business model, employees, equipment,

facilities, and provides or provided the same services to the same clients as its predecessor,

Torqued-Up."  (Am. Compl. ¶¶ 20–21).  Defendants argue that in order to satisfy the "substantial

continuity" element of the successor liability test, Plaintiffs needed to have alleged that "a

'*substantial*' part of Torqued-Up's company was sold to UPP," and that Plaintiffs' allegation that

"a part of" Torqued-Up was sold is insufficient.  (Defs.' Mot. to Dismiss at 5) (emphasis added).

The Court disagrees.  Plaintiffs have alleged facts with respect to the majority of the seven

factors listed in *Rojas*—Plaintiffs' new employer used the same facilities and equipment as

Torqued-Up, had the same work force and supervisors, and provided the same services to clients.

(Am. Compl. ¶ 20).  Accepted as true, these pleadings are sufficient for the Court to conclude

that there was substantial continuity between the predecessor, Torqued-Up, and successor, UPP,

regardless of exactly how much of Torqued-Up UPP acquired.  *See Thompson v. Real Estate*

*Mortg. Network*, 748 F.3d 142 (3rd. Cir. 2014) ("The Amended Complaint in fact alleges that

essentially all facets of the business at issue . . . remained the same. . . . .  For purposes of the

instant motion we find [plaintiff's] allegations sufficient to demonstrate a plausible 'continuity in

operations and work force.'"); *Valdez*, 999 F. Supp. 2d at 945 (suggesting similar allegations

were sufficient to satisfy business continuity element of successor liability test).

b.      Notice

Defendants next argue that Plaintiffs have not adequately alleged that UPP had notice of

possible FLSA violations.  *Rojas* describes "whether the successor company had notice of the

charge or pending lawsuit prior to acquiring the business or assets of the predecessor" as a

"critical" factor in the successor liability test.  87 F.3d at 750.  With respect to notice, the

amended complaint alleges that "Torqued-Up's managers and supervisors knew about Torqued-

Up's practices of not paying employees, including Plaintiffs, pursuant to the requirements of the

FLSA, and informed [Patterson-UTI] and/or [UPP] before the sale of Torqued-Up."   (Am.

Compl. ¶ 21).  Defendants argue that this allegation is insufficient because it does not identify

"facts regarding by whom and how notice was allegedly conveyed."  (Defs.' Mot. to Dismiss at

6).  Further, they argue that allegations regarding management's knowledge of a violation and

later employment with the successor are insufficient to allege notice by the successor.  Plaintiffs

respond that their factual allegations regarding notice do not rely on continuity of management

alone, but on their allegation that management at Torqued-Up was aware of the FLSA violations

and notified UPP of those violations.

The Court agrees with Plaintiffs.  "[T]he pleading standard Rule 8 announces does not

require 'detailed factual allegations'" of the type called for by the Defendants, naming exactly by

whom and how notice was allegedly conveyed.  *See Iqbal*, 556 U.S. at 678.  If the pleading

standard were that demanding, few Plaintiffs bringing FLSA claims under a successor liability

11

theory could meet it without the benefit of discovery.  *Cf. Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("But [the notice] factor, like others in this case, is not one as to which [the plaintiff] should be expected to come forward with detailed proof at this stage.").  Further, Plaintiffs did identify by whom notice was conveyed—previous managers and supervisors of Torqued-Up, whom Plaintiffs have already alleged became managers and supervisors at UPP.

Defendants rely on *Valdez v. Celerity Logistic, Inc.*, among other cases, to argue that Plaintiffs' allegations regarding notice are insufficient.  The Court is unconvinced for two reasons.  First, other than *Valdez*, the cases relied on by Defendants are at the summary judgment stage, and thus necessarily required more facts related to notice than are required here.  *See Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 319 (S.D.N.Y. 2014); *E.E.O.C. v. Barney Skanska Const. Co.*, No. 99CIV.2001, 2000 WL 1617008 (S.D.N.Y. Oct. 27, 2000). Second, while Defendants seek to analogize this case to *Valdez*, the plaintiffs in that case alleged no facts directly related to notice, relying solely on allegations regarding the continuity of management between the predecessor and successor companies to suggest the successor had notice. *Valdez*, 999 F. Supp. 2d at 945 n.11 ("The amended complaint is silent about which, if any, employees knew about potential FLSA liability and what their level of responsibility was."). Here, Plaintiffs have not only alleged continuity of management, but have also made specific allegations that UPP was informed about the FLSA violations by managers and supervisors at Torqued-Up before it acquired part of the company.  While these facts are bare, they plausibly allege that Defendants received notice of Torqued-Up's unlawful practices and are sufficient to meet the standard required by Rule 8.  *Iqbal*, 556 U.S. at 678.

c.      Ability of Predecessor to Provide Relief

Defendants also argue that the amended complaint fails to address the predecessor's ability to provide relief, as required by the successor liability test.  *See Rojas*, 87 F.3d at 750. Plaintiffs respond that rather than considering the *predecessor's* ability to provide relief, this Court should consider the *successor's* ability to do so.  Plaintiffs base this argument on an unpublished Fifth Circuit opinion, *Powe v. May*, 62 F. App'x. 557 (5th Cir. 2003), that considered the ability of the successor to provide relief in ultimately determining that successor liability was not warranted.  This Court sees no reason to replace the factor described in *Rojas*— a published Fifth Circuit opinion—with the one in *Powe*, particularly where "the panel in *Powe* cited *Rojas* without suggesting that it was modifying the *Rojas* test."  *Valdez*, 999 F. Supp. 2d at 942 n.6.    Further, Plaintiffs argue that the absence of factual allegations regarding the predecessor's ability to provide relief can be overlooked because successor liability is primarily an equitable doctrine.   Like the notice element, however, the Fifth Circuit described the predecessor's ability to provide relief as a "critical" factor.  *Rojas*, 87 F.3d at 750; *see also Musikiwamba*, 760 F.2d at 750 ("[I]t would be grossly unfair . . . to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief.").  Thus, in order to sufficiently allege successor liability, Plaintiffs must allege some facts related to the predecessor's inability to provide relief.

Nowhere in the pleadings, however, do Plaintiffs address Torqued-Up's ability to provide them relief.  Without such allegations, and with no other facts in the complaint from which this Court can infer that Torqued-Up is unable to provide the Plaintiffs relief, the pleadings have failed to sufficiently allege that UPP is liable as a successor to Torqued-Up.

Plaintiffs have sufficiently alleged both the substantial continuity and notice elements of the successor liability test, but failed to allege any facts related to whether the predecessor is able to provide relief.   Thus, the Court finds that Plaintiffs have failed to state a plausible claim for relief under the successor liability doctrine with respect to UPP.

### C.      Whether Patterson-UTI is Plaintiffs' Employer

The final reason Defendants put forth for dismissing the Plaintiffs' complaint is that the amended complaint fails to sufficiently allege that Patterson-UTI is their employer.   In an FLSA case, it is typically necessary to demonstrate that both a subsidiary and its parent company are employers in order to hold both companies liable.   *See Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012) ("The Fifth Circuit uses the 'economic reality' test to evaluate whether there is an employer/employee relationship. . . .   In cases where there may be more than one employer, this court 'must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.'").   Here, however, Patterson-UTI's alleged liability does not hinge on whether it was Plaintiffs' employer, but instead on whether it can be held liable as a successor to Torqued-Up, the employer who allegedly violated the FLSA.   Thus, the Court disagrees with Defendants that Plaintiffs must allege that Patterson-UTI was their employer.   Instead, in order to impose liability on Patterson-UTI, Plaintiffs will likely need to demonstrate that the corporate veil should be pierced with respect to the parent-subsidiary relationship between Patterson-UTI and UPP, and then, that the successor liability doctrine should apply.   Thus, while the Court has already determined that Plaintiffs' complaint against Patterson-UTI should be dismissed, it disagrees with Defendants that the complaint is deficient because Plaintiffs have not adequately alleged that Patterson-UTI is their employer.

## IV.    LEAVE TO AMEND

In their response to Defendants' motion to dismiss, Plaintiffs request leave to amend their complaint if the Court grants Defendants' motion.  Because the Court has determined that Defendants' motion should be granted, it will consider whether granting Plaintiffs leave to amend is appropriate.

The Federal Rules of Civil Procedure establish that "[t]he court should freely give leave [to amend] when justice so requires."  *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (quoting Fed. R. Civ. P. 15(a)(2)).  This "generous standard is tempered by the necessary power of a district court to manage a case."  *Id.*  Thus, leave to amend may be denied "for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *U.S. ex. rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014).

Defendants argue that Plaintiffs' request for leave to amend should be denied because Plaintiffs have failed to comply with Local Court Rule CV-7(b), which requires that an executed copy of a proposed pleading be filed with a motion for leave to amend, and because the deficiencies in the amended complaint are incurable.  The Court disagrees with both arguments. First, Defendants' interpretation of Local Court Rule CV-7(b) is overbroad.  Plaintiffs need not file an executed copy of their proposed pleading where they are not independently moving for leave to amend, but seek to amend only if the Court deems their existing pleadings insufficient. Requiring otherwise would force plaintiffs to redraft their pleadings even where the court might ultimately deem the existing ones sufficient.  Second, while it may be "unclear" how Plaintiffs might amend their complaint with respect to each defendant to cure the complaint's deficiencies, (Defs.' Reply at 8), that uncertainty does not warrant denying Plaintiffs the opportunity to do so.

Plaintiffs have not yet requested leave from this Court to amend their pleadings,[7] and it is at least possible that each of the amended complaint's deficiencies can be cured. The Court therefore concludes that there is no substantial reason to deny Plaintiffs their requested leave to amend and grants Plaintiffs twenty-one days to file a second amended complaint.

**V.      CONCLUSION**

In light of the foregoing, Defendants Patterson-UTI and UPP's Motion to Dismiss (Dkt. #28) is **GRANTED**. Plaintiffs' claims against Patterson-UTI and UPP are dismissed without prejudice. Plaintiffs have twenty-one days to replead.

**SIGNED** on May 31, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiffs have filed one amended complaint, allowed as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B).